<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JEAN DODARO,

       Plaintiff,

  v.

ACME MARKETS D/B/A/ ALBERTSON'S, INC.

       Defendant.

CIVIL ACTION NO. 06-0387 (DRD)

<u>OPINION</u>

THE LAW OFFICE OF JASON T. BROWN
Jason T. Brown, Esq.
Karin R. White Morgen, Esq.
304 Newark Avenue
Jersey City, New Jersey 07302
    *Attorneys for Plaintiff*

KLETT ROONEY LIEBER & SCHORLING
Nicholas R. Apruzzi, Esq.
550 Broad Street, Suite 810
Newark, New Jersey 07102
    *Attorneys for Defendant*

<u>DEBEVOISE, Senior District Judge</u>

      Plaintiff, Jean Dodaro ("Dodaro"), was employed by defendant, Acme Markets ("Acme"), and is suing pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, ("NJLAD"), alleging that her transfer to a workplace a great distance from her home constituted (i) a failure to accommodate her disabilities; (ii) constructive discharge; (iii) retaliation; and (iv) intentional infliction of emotional distress. Acme now moves to dismiss

Dodaro's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, Acme's motion is denied with respect to all claims except for the claim of intentional infliction of emotional distress, which will be dismissed.

## I. PROCEDURAL HISTORY

Dodaro filed a Complaint on December 15, 2005, alleging that Acme discriminated against her based upon her alleged disabilities in violation of the NJLAD 10:5-1 *et seq.*  The four counts of the Complaint are: (i) failure to accommodate her disabilities; (ii) constructive discharge; (iii) retaliation; and (iv) intentional infliction of emotional distress.  On January 27, 2006, Acme timely removed this action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332.  Acme filed this motion to dismiss on February 15, 2006.

## II. FACTS AS ALLEGED IN THE COMPLAINT

Dodaro, a citizen of New Jersey, was employed by Acme from August 1982 to March 2005.  (Complaint, ¶¶ 1, 14-17).  Acme is a wholly owned subsidiary of Albertsons, Inc. and is incorporated under the laws of Delaware, with its principal place of business in Malvern, Pennsylvania.  (Notice of Removal, ¶ 4).  Dodaro began her employment with Acme in 1982 at the Jersey City, New Jersey, store location, and held a variety of positions during the course of her employment, including Deli Clerk, Bakery Clerk, Cashier and Acting Manager Deli.  (Complaint, ¶¶ 2).  Dodaro received a variety of recognitions and raises throughout her

employment. (Complaint, ¶¶ 4, 14). Dodaro suffers from a variety of medical and/or health problems, including diabetes, heart problems, and small strokes known as TIA's. As a result, she claims that she became and remains disabled and is entitled to reasonable accommodations in the workplace. (Complaint, ¶¶ 3, 5). In February 2000, Dodaro provided Acme with a doctor's note confirming her disability and indicating her need for accommodation, namely that she was to limit her driving to short distances. (Complaint, ¶ 9). The Jersey City store is within five miles of Dodaro's home. (Response Brief at 5). Dodaro was fully capable of performing all aspects of her job despite her disability and was capable and qualified to continue to work in her then current capacity with Acme at the Jersey City location. (Complaint, ¶ 4).

In July 1999, Acme transferred Dodaro from the Jersey City store to a store located approximately fifteen miles from her home. (Complaint, ¶ 8). She suffered a stroke in August 1999 and was on disability leave until November 1999, when Acme returned her to her position at the Jersey City store. (Complaint, ¶ 8). Dodaro verbally informed her manager at that time that she was no longer permitted to drive for long distances and, in February 2000, provided Acme with a doctor's note confirming her disability and indicating her need for accommodation. (Complaint, ¶ 9). In March 2000, Dodaro was transferred from the Jersey City location to the Clifton location, which was approximately 23 miles from her home. (Complaint, ¶ 10). Seven months later, in October 2000, Dodaro suffered another stroke. (Complaint, ¶ 11). She returned to work in February 2001 at the Jersey City location. (Complaint, ¶ 12).

In March 2002, Acme attempted to transfer Dodaro from the Jersey City location to its Milltown store (approximately 30 miles from her home). (Complaint, ¶ 12). Dodaro obtained another doctor's note indicating her disability and was assisted by union intervention.

3

(Complaint, ¶¶ 12-13).  Acme permitted her to remain at the Jersey City location where she remained until February 2005 when she suffered a minor TIA.  (Complaint, ¶¶ 13-14).  About a week after Dodaro returned to work in March 2005, Acme notified Dodaro that she was being reassigned to their Middletown store.  (Complaint, ¶15).  This location was approximately 27 miles away from her home and Dodaro reasserted her disability and doctor's note and requested accommodation in the form of being able to remain at the Jersey City location (Complaint, ¶¶ 15-16).  Acme denied this request.  (Complaint, ¶ 16).  Dodaro "then became so anxious and upset by [Acme's] actions that her doctor determined that she was disabled and unable to work or risk having another stroke."  (Complaint, ¶ 17).  Rather than report to the Middletown location, Dodaro retired and filed a Complaint on December 15, 2005, alleging that Acme discriminated against her based upon her disabilities in violation of the New Jersey Law Against Discrimination (NJLAD) 10:5-1 *et seq*.  The four counts of the Complaint are: (i) failure to accommodate her disabilities; (ii) constructive discharge; (iii) retaliation; and (iv) intentional infliction of emotional distress.  Acme filed this motion to dismiss all four counts on February 15, 2006.

### III. DISCUSSION

**Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as all named parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Standard of Review for Dismissal under Fed. R. Civ. P. 12(b)(6)**

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73. Allegations contained in the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). However, the plaintiff is required to make factual allegations and cannot rely on conclusory recitations of law. Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

**New Jersey Law Against Discrimination (NJLAD)**

Dodaro alleges that Acme unlawfully discriminated against her in violation of the NJLAD. The NJLAD states in pertinent part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
> a. For an employer, because of the race, creed, color, national origin, ancestry, . . . *disability* or atypical hereditary cellular or blood trait of any individual, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

N.J. Stat. Ann. § 10:5-12(a) (emphasis added).

Generally, a claim under the NJLAD is analyzed under Title VII standards. Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999). To succeed, a plaintiff must initially establish a prima facie case of unlawful discrimination. Jalil v. Avdel Corp., 873 F.2d 701, 707

5

(3d Cir. 1989). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 (3d Cir. 1996). Thereafter, the burden shifts back to the plaintiff "to produce some evidence from which a reasonable factfinder could conclude either that the [employer's] proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." Bray v. Marriott Hotels, 110 F.3d 986, 990(3d Cir. 1997). A plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

**Count I: Failure to Accommodate**

In Count I, Dodaro alleges that Acme discriminated against based upon her disability by failing to accommodate her request to remain at the Jersey City store location and instead required her to transfer to a store location many miles from her home in contravention of her doctor's orders. Per Dodaro's Complaint, this refusal caused her to become "so anxious and upset that her doctor determined she was disabled and unable to work or risk having another stroke" and so she was forced to resign from her employment with Acme. (Complaint, ¶ 17).

To establish a prima facie case of failure to accommodate under the NJLAD a plaintiff must show that (1) she was handicapped within the meaning of the law, (2) she was qualified to perform the essential functions of her position, with or without accommodation, and (3) she suffered an adverse employment action because of the handicap. Bosshard v. Hackensack Univ.

Med. Ctr., 345 N.J. Super. 78, 91 (App. Div. 2001) (citing Seiden v. Marina Assoc., 315 N.J. Super. 451, 465-66 (Law Div. 1998). An employer "must make a reasonable accommodation to the limitations of a handicapped employee or applicant unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Soules v. Mount Holiness Mem'l Park, 354 N.J. Super. 569, 576-77 (App. Div. 2002) (citing N.J.A.C. 13:13-2.5(b)). The determination of whether a proposed accommodation is reasonable, or whether it would impose undue hardship upon the employer, is made on a case-by-case basis, involving consideration of factors including the size of the employer's business, the type of operations, the nature and cost of accommodations needed, and the extent to which the accommodation would involve waiver of an essential requirement of a job. Dicino v. Aetna U.S. Healthcare, 2003 WL 21501818 (D.N.J. 2003) (citing Soules, 354 N.J.Super. at 576-77).

  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) we are to accept allegations in the Plaintiff's complaint as true. Cruz, 405 U.S. at 322. Based on the allegations in her complaint, Dodaro is able to establish a prima facie case of failure to accommodate under the NJLAD. Dodaro alleges that she was handicapped within the meaning of the law. She alleges that she was qualified to perform the essential functions of her position with or without accommodation and had, in fact, received recognitions and raises for her job performance. Finally, she alleges that she suffered an adverse employment condition because of her disability, namely that Acme's demands that she transfer to another store location far exceeding the limitations imposed upon her by her doctor due to her disability exacerbated her medical condition until she became permanently disabled and was forced to retire.

  In its motion to dismiss Count I of Dodaro's complaint, Acme argues that Dodaro has

failed to state a claim for failure to accommodate under the NJLAD because the accommodation that Dodaro requested was essentially for a shorter commute and that such an accommodation is not reasonable under the law.  Because Acme considers the requested accommodation unreasonable under the law, it does not go into an undue hardship argument.  In support of its position that Dodaro's requested accommodation is unreasonable under the law, Acme cites to two New Jersey District Court decisions which held that commuting is a barrier outside the workplace and therefore employers are not required to accommodate "commuting difficulties."  See Laresca v. American Tel. & Te., 161 F.Supp. 2d 323 (D.N.J. 2001); Dicino v. Aetna U.S. Healthcare, No. Civ. 01-3206 (JBS), 2003 WL 21501818 (D.N.J. June 23, 2003).

     In Laresca, the Court held that an employer was not obligated under the NJLAD to accommodate the commuting problem of an employee with epilepsy.  Laresca, 161 F.Supp. 2d at 335.  The Court noted that a number of other courts have held that commuting to and from work is not part of the work environment that an employer is required to reasonably accommodate.  Id. at 333.  In Laresca, the Plaintiff suffered from epileptic seizures and relied upon friends and co-workers for transportation to and from work.  His employer initially accommodated him by assigning him to a daytime shift.  Id. at 326.  Plaintiff took a four month leave of absence and when he returned the only position available in the same job title would have required him to work the night shift.  Id.  Plaintiff acknowledged that the only reason he could not work the night shift was because of his inability to commute to work during those hours as he was unable to drive and could not obtain transportation to and from the train station after working the night shift.  Id.

     In Dicino, the Court found that under the NJLAD an employer was not obligated to

accommodate an employee's request for working at an office within 30 minutes of her home, which essentially constitutes a commuting problem. Dicino, 2003 WL at *15. In that case, similar to the instant case, the plaintiff's doctor had imposed a driving restriction upon her. The plaintiff requested that she either be transferred to a location within 30 minutes of her home or be allowed to work from home. But for the commute, plaintiff could have continued working at the same location she had been working. The Court made its decision based on the holding in LaResca and Salmon v. Dade County School Board, 4 F.Supp.2d 1157 (S.D.Fla. 1998), a case involving the Americans with Disabilities Act (ADA) and on which the LaResca court also relied. It is important to note that in Dicino the employer did not have an office within 30 minutes of the employee's home and that the employee was not qualified to work from home. Dicino, 2003 WL at *15-16.

As there is a "dearth of New Jersey [case] law on the issue of the employer's obligation to accommodate the physical handicap of an employee," both federal and New Jersey state courts have "consistently looked to federal law for guidance in construing the NJLAD." LaResca, 161 F.Supp.2d at 334 (citing Ensslin v. Township of North Bergen, 275 N.J. Super. 352, 364, 646 A.2d 452, 457-58 (1994) and Leshner v. McCollister's Transportation Systems, 113 F.Supp.2d 689, 692 (D.N.J. 2000)). In Bill v. Coyner, 2000 WL 224807 (N.D.Ill. Feb. 23, 2000), an ADA case, the plaintiff suffered from an eye disease that rendered him legally blind and made it difficult for him to travel to and from work in the evenings. The employer, despite having full knowledge of the plaintiff's vision problems, changed the plaintiff's work schedule so that he was forced to work at night. The accommodations the plaintiff sought included a request for a schedule in which he would not have to work nights and a requirement that employees drive him

to and from work.  Id. at *9.  The court found there to be no ADA violation for failure to accommodate because "activities such as commuting to and from work fall outside the scope of the job and are therefore not within the scope of an employer's obligations under the ADA."  Id.

Accepting all of Dodaro's allegations as true and drawing all reasonable inferences in her favor, Dodaro's case is distinguishable from all of the above cases.  Here, Acme asserts in its Reply Memorandum that there was no open position available when Dodaro returned to work after suffering a minor TIA.  (Reply Memorandum at 4).  In her complaint, however, Dodaro asserts that she was back at work at the Jersey City store for a week before she was notified that she was being transferred to the Middletown location.  (Complaint, ¶¶ 14, 15).  Therefore, unlike the cases above where the plaintiffs requested accommodation in the form of a shift change or a transfer, Acme was attempting to transfer Dodaro to a location that she could not reach and she was simply asking to remain at her current job location.  A request to remain in one's current job location could be considered a reasonable accommodation under the NJLAD.  Even if this were a commuting issue under the NJLAD, this Court is not necessarily ready to accept as a blanket rule the holdings of the above district courts.  Thus, Acme's motion to dismiss Count I will be denied.

**Count II: Constructive Discharge**

In Count II, Dodaro alleges that she was constructively discharged from her position at Acme because the reasonable person would resign rather than accept a job transfer that would increase the risk having seizures that could be serious and even fatal.  To establish a prima facie case of constructive discharge in New Jersey, "a plaintiff must establish that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable

person subject to them would resign.'"  Kluczyk v. Tropicana Products, Inc., 368 N.J.Super. 479, 493 (App. Div. 2004) (quoting Shephard v. Hunterdon Center, 174 N.J. 1, 27-38, 803 A.2d 611 (2002)); Muench v. Township of Haddon, 255 N.J.Super. 288, 301-01, 605 A.2d. 242 (App. Div. 1992).  This "standard envisions a 'sense of outrageous, coercive and unconscionable requirements.'" Shephard, 174 N.J. at 28 (quoting Jones v. Aluminum Shapes, Inc., 339 N.J.Super. 412, 428 (App. Div. 2001)).

Acme argues in its motion to dismiss that a lateral job transfer with an increased commute cannot amount to "intolerable conditions."  See Cherchi v. Mobile Oil Cor., 693 F.Supp.156, 162 (D.N.J. 1998) (change in job and relocation not grounds for constructive discharge); see also Darnell v. Campbell County Fiscal Court, 731 F.Supp. 1309 (E.D. Ky. 1990), aff'd, 924 F.2d 1057 (6th Cir. 1991) (transfer to another position with no loss of pay was not grounds for constructive discharge).  In this case, however, the reasonable person could consider that an increased commute which would put a person at an increased risk of serious or even fatal seizures would be an "intolerable condition" and resign, especially when Dodaro had indeed suffered serious seizures in the past when she was transferred to locations many miles from her home.

Acme further argues that a plaintiff cannot state a claim for constructive discharge where the requested accommodation is not reasonable as a matter of law, citing to Gaul v. AT&T, Inc., 955 F.Supp 346, 353 (D.N.J. 1997), aff'd 134 F.3d 576 (3d Cir. 1998).  As noted in the discussion on Count I above, Dodaro's requested accommodation of remaining at her current job location could be considered reasonable under the law.  Therefore, Dodaro is able to maintain a claim for constructive discharge.  For these reasons Acme's motion to dismiss Count II is denied.

**Count III: Retaliation**

To establish a prima facie case of retaliation under the NJLAD, Dodaro must show that: 1) she was engaged in protected activity known to the Defendant; 2) she was thereafter subjected to an adverse employment decision by the Defendant; and 3) there was a causal link between the two. See Craig v. Suburban Cablevision, 274 N.J.Super. 303, 310 (App. Div. 1994), aff'd, 140 N.J. 623 (1995). In its motion to dismiss Acme argues, without waiving the argument that Dodaro also cannot establish the additional prongs of her retaliation claim, that Dodaro fails to state a claim of unlawful retaliation because she is unable to establish that Acme took an adverse employment action against her.

The Courts have held that a lateral job transfer does not constitute an adverse employment action. See Koehl v. Newark Star Ledger 2004 WL 1630957, *5-6 (N.J.Super. A.D. July 10, 2004); Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998) (transfer that increased commute but did not alter salary benefits or responsibilities, not adverse employment action). In this case, however, Dodaro did not simply find the lateral transfer undesirable, she found it was intolerable because of her disability. Looking at all reasonable inferences in favor of Dodaro, it could be found that Acme was attempting to punish her for complaining about Acme's failure to respond to complaints about her disability by transferring her to a location twenty seven miles away from her home after she returned to work following a minor TIA. As Acme was on notice of Dodaro's disability and that she had suffered more serious TIAs in the past after being transferred to locations at increased distances from her home, its actions in this case have the appearance of retaliation by attempting to force Dodaro to retire. Thus Acme's motion to Dismiss Count III is denied.

**Count IV: Intentional Infliction of Emotional Distress**

In order to state a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must establish that:

1. The defendant's conduct was "extreme" and "outrageous" and "utterly intolerable in a civilized community . . . .";
2. The defendant acted intentionally and intended both to do the act and to produce the emotional distress;
3. The defendant's conduct was the proximate cause of the plaintiff's emotional distress; and
4. The emotional distress suffered by the plaintiff is "so severe that no reasonable person could be expected to endure it."

Buckley v. Trenton Saving Fund Society, 111 N.J. 355, 366-67 (1988); see also Restatement (Second) of Torts § 46.  Under New Jersey law, liability is imposed for this tort "where the conduct exceeded all bounds usually tolerated by decent society and where the actions are especially calculated to cause and do cause mental distress of a very serious kind."  Hume v. Bayer, 178 N.J.Super. 310, 315, 428 A.2d 966 (1981) (physician liable because he notified parents that their child was suffering from a rare disease while in fact he knew that the child had nothing more than a mildly infected appendix).  Whether a plaintiff has alleged facts which, if true, would satisfy this burden is a question for determination by the court.  Buckley, 111 N.J. at 367.

Establishing extreme and outrageous behavior in employment related disputes is very difficult to do.  A transfer to a more distant work location is not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress, even accepting the allegations of the complaint as true and drawing all reasonable inferences in Dodaro's favor.  Requiring Dodaro to accept a transfer that would put her at an increased risk of suffering a

13

serious or fatal seizure may constitute a problem under the NJLAD, but it does not rise the level of being "utterly intolerable in a civilized community."  Therefore Acme's motion to dismiss Count IV is granted.

## IV.  CONCLUSION

     For the reasons stated above, Acme's motion to dismiss Count IV will be granted and its motion to dismiss Counts I, II and III will be denied.  The court will enter an order implementing this opinion.

                                /s/ Dickinson R. Debevoise  
                                DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:       March 21st, 2006