NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------
JEAN DODARO,                         :
                                     :
            Plaintiff,               :    Civ. No. 06-0387 (DRD)
                                     :
      v.                             :
                                     :
ACME MARKETS D/B/A                   :    **O P I N I O N**
ALBERTSON'S, INC.,                   :
                                     :
            Defendant.               :
                                     :
---------------------------------------------------------

THE LAW OFFICE OF JASON T. BROWN
Jason T. Brown, Esq.
304 Newark Avenue
Jersey City, New Jersey 07302

*Attorneys for Plaintiff Jean Dodaro*


BUCHANAN INGERSOLL & ROONEY PC
Jennifer L. Petruccelli, Esq.
550 Broad Street, Suite 810
Newark, New Jersey 07102-4582

*Attorneys for Defendant Acme Markets, Inc.*


**DEBEVOISE, Senior District Judge**

## I.  PROCEDURAL HISTORY

Plaintiff Jean Dodaro ("Plaintiff") filed the complaint in this action on December 15, 2005 (the "Complaint"). In the Complaint, Plaintiff alleges that defendant, Acme Markets, Inc.

1

("Defendant" or "Acme"), violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"). Specifically, she alleges: (1) failure to accommodate (First Count); (2) constructive discharge (Second Count); (3) retaliation (Third Count); and (4) intentional infliction of emotional distress (Fourth Count). By order dated March 21, 2006, the court dismissed the Fourth Count of the Complaint. Defendant now moves for summary judgment on the remaining counts. For the reasons stated below, Defendant's motion will be granted.

## II.  BACKGROUND

The following facts are undisputed by the parties.[1] Acme is a grocery retailing company that operates 128 supermarkets in Delaware, Maryland, New Jersey, and Pennsylvania. District 5, which covers North and Central New Jersey, contains sixteen Acme stores, including stores in Jersey City and Milltown. Diane Kunze ("Kunze") was the district manager for District 5. Jon Welch ("Welch") has been the store director of the Jersey City store since April 2006. Prior to that, he was the acting store director for about a year and a half. In both capacities, Welch reported to Kunze.

Non-management Acme employees, including Plaintiff, are represented by UFCW Local 1245 (the "Union"). Under a collective bargaining agreement (the "CBA") negotiated by Acme and the Union, Acme employees are subject to the terms and conditions of employment contained therein. Included in the CBA, is a provision which states: "[t]he authority and responsibility for the management of the business, including but not limited to, the planning,

---

[1]As Plaintiff has failed to provide: (1) a statement of material facts as mandated by Local Civil Rule 56.1; or (2) any certifications or exhibits, the court will accept as true all facts set forth in Defendant's Rule 56.1 statement unless contradicted by Defendant's submissions.

direction and control of the working force, shall repose exclusively in the Employer and its appointed representative, subject to the provisions of this Agreement."

Plaintiff began at the Jersey City store as a part-time deli clerk in or about 1983. About a year and a half later, she began working full-time. In addition to her work as a deli clerk, she performed other tasks, such as stocking shelves and working as a cashier. Plaintiff never performed any management functions while employed by Acme.

In May 1996, Plaintiff was transferred to the East Rutherford store location and remained there until August 1996, when she was again transferred to the Clifton store. In March 1997, she returned to the Jersey City and worked there until she was transferred to Secaucus in July 1997. In January 1998, Plaintiff returned to the Clifton store and worked until February 1999. Plaintiff returned to the Jersey City store in March 2001, where she worked until she was placed on medical leave in April 2005. Plaintiff retired in September 2005. During her employment with Acme, Plaintiff never told any supervisor, manager, or anyone in human resources that she believed she was being discriminated against.

In the latter part of 2004, Welch was assigned as the acting store director of the Jersey City store and was of the view that one of the driving forces of costs was employee wages. Welch and Kunze determined that it was necessary to reduce labor costs at the Jersey City store, which entailed transferring non-classified, or non-management, full-time employees.

On or about March 12, 2005, Plaintiff took a medical leave of absence. While she was out on medical leave, Acme did not need to hire anyone else to replace Plaintiff. Welch and Kunze testified that around the same time, the Milltown store was in need of an experienced deli

3

clerk.  They testified that because of: (1) the need for a deli clerk; (2) Plaintiff's years of experience as a deli clerk; (3) the budget problem at the Jersey City location; and (4) the lack of a need to replace Plaintiff at the Jersey City store, they made the decision to transfer Plaintiff from Jersey City to Milltown.

On or about April 11, 2005, Plaintiff returned from leave and was told that she was being transferred to the Milltown store.  Plaintiff responded by stating that she could not drive the distance to Milltown for medical reasons and that she had provided prior members of management with doctor's notes regarding her driving limitation.[2]  Plaintiff subsequently brought in a doctor's note regarding her driving limitation dated April 12, 2005.  The note states: "[d]ue to the severity of Jean's medical condition I advised her not to drive more than 5 miles to work."

Thereafter, Plaintiff spoke with the Union about the transfer.  The Union responded by telling Plaintiff that it could not do anything for her.  Plaintiff also testified that she is aware that the CBA allows transfers to other stores.

It is Acme's position that it does not make any accommodations for its employees for transportation/commuting difficulties and that many employees take buses and trains, walk, or ride bicycles to work.  Despite this policy, Kunze delayed Plaintiff's transfer by almost two weeks while exploring alternatives which would allow Plaintiff to stay at the Jersey City location or allow her to work at a location closer to her home.  Kunze offered to transfer Plaintiff to the Middlesex store, which was ten miles closer to Plaintiff's home, but this offer was rejected by Plaintiff.  Although the option of employing Plaintiff at the Jersey City store part-time was never

---

[2]Defendant states that for purposes of this motion only, it does not dispute that Plaintiff provided Acme with prior notice of her driving restrictions.

generated by either Defendant or Plaintiff, Plaintiff testified that she would not have accepted a part-time position.

At the time of Plaintiff's transfer, there were only two other full-time non-management employees at the Jersey City store: Richard Garrity ("Garrity"), who was on the night crew, and Barbara Gibbons ("Gibbons"), a cashier who could perform management functions. Neither employee had deli experience. Garrity was eventually transferred after a replacement, part-time employee was hired for his position.

On or about May 23, 2005, Plaintiff sent a letter to Acme's headquarters requesting that Acme provide her daily transportation to the Milltown store. By letter dated June 17, 2005, Acme advised Plaintiff that it could not provide her with daily transportation to and from work.

Plaintiff never inquired into whether there were any buses or other methods of public transportation that would have enabled her to get to the Milltown store. Plaintiff never looked into a van or taxi service which could have provided transportation to the Milltown store. Other than asking one of her sons, who was a taxi driver, Plaintiff did not ask whether any other member of her family or a friend could drive her to work.

In or about May or June 2005, Plaintiff applied for Social Security disability benefits. The Social Security Administration ("SSA") informed Plaintiff, by letter dated July 18, 2005, that she would be entitled to benefits.[3] In her disability report with the SSA dated May 14, 2005 (the "Disability Report"), Plaintiff states that she stopped working on April 16, 2005.

---

[3] Plaintiff is still receiving Social Security disability benefits.

At her deposition, Plaintiff testified that, from April 2005 to September 2005, she was able to perform the functions of her job as a deli clerk and cashier without any accommodation. When asked about the Disability Report at her deposition, Plaintiff testified that she was unable to work after April 16, 2005 in any capacity, with or without an accommodation.

Plaintiff claims that she suffered and continues to suffer a variety of medical and/or health problems, including diabetes, heart problems and small strokes known as TIA's. (Pl.'s Br. 6). She alleges that her medical and health problems were caused by the stress of not being transferred back to the Jersey City store and that she has experienced extreme financial hardship as a result of her unemployment. (Id.). She argues that the Defendant is liable under the NJLAD for its failure to accommodate her because Defendant caused the disability from which Plaintiff suffers. (Id. at 11). Additionally, Plaintiff claims that Defendant's acts constituted constructive termination and retaliation under the NJLAD.

### III.  DISCUSSION

**A.     Standard of Review**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the

court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

**B.      Failure to Accommodate Claim**

The NJLAD states in part that it shall be an unlawful employment practice or unlawful discrimination:

> a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, domestic partnership status, affectional or sexual orientation, genetic information, sex, disability or atypical hereditary cellular or blood trait of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . .

N.J.S.A. § 10:5-12.

"'Generally, a *prima facie* case of failure to accommodate requires proof that (1) the plaintiff had a LAD handicap[4]; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap.'"[5] Conoshenti v. Public Service Elec. & Gas Co. 364 F.3d 135, 150 (3d Cir. 2004) (quoting Bosshard v. Hackensack University Medical Center, 345 N.J. Super. 78, 91 (App. Div. 2001)).

---

[4] For purposes of this motion, Defendant does not dispute that Plaintiff is handicapped within the meaning of the NJLAD.

[5] NJLAD claims are governed by the same standards and same analytical framework as claims under the ADA. Lincoln v. Momentum Sys. Ltd., 86 F. Supp. 2d 421, 427 (D.N.J. 2000) (citing Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 956 (3d Cir. 1996)).

"If a plaintiff receives disability benefits after claiming he was 'totally disabled' and unable to work, he may be judicially estopped from pursuing an action for disability discrimination against his employer . . . claiming he could 'perform the essential functions' of his job." Lincoln, 86 F. Supp. 2d at 427-28.

> Judicial estoppel
>
> > is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'"

Ryan Operations G.P. v. Santium-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (quoting Scarano v. Cent. R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953)).

Courts have held that a plaintiff who: (1) claims that she is unable to work due to a disability when applying for disability benefits; and (2) pursues a claim under the NJLAD or ADA for failure to accommodate, must proffer a reasonable explanation of these inconsistent statements in order to survive a motion for summary judgment. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999) (Social Security Disability Insurance benefits and the ADA); Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999) (accidental disability pension benefits and the ADA, NJLAD); Lincoln, 86 F. Supp. 2d 421 (SSDI benefits, private long-term benefits and the ADA, NJLAD).

At Plaintiff's deposition, when asked about a transportation accommodation, she testified that, from April 2005 to September 2005, she was able to perform the functions of her job as a deli clerk and cashier without any accommodation. However, when asked about the Disability Report with the SSA which states that she stopped working on April 16, 2005, she testified that

she was unable to work after that time in any capacity, with or without an accommodation. Thus, in this case, there are two inconsistencies: (1) the inconsistency in her deposition testimony; and (2) the inconsistency between her statements in the Disability Report (and her deposition testimony regarding that report) and her NJLAD claim.

Plaintiff is clearly "playing fast and loose" with the court. Plaintiff completely fails to explain the first inconsistency. Plaintiff attempts to explain the second inconsistency by arguing that "if Acme had accommodated Dodaro's several requests since 1998 to work within five miles of her home, Dodaro would not have been permanently disabled at this time." (Pl.'s Br. 10). Plaintiff claims that she "is a qualified individual pursuant to the NJLAD because she would have been able to perform her job functions had her request for accommodation been satisfied." (Id.).

Even assuming, *arguendo*, that Plaintiff's "explanation" is true[6], this would not change the fact that she has presented no evidence to explain the inconsistency between her claim at the time she stopped working that she was unable to work in any capacity, with or without an accommodation, and her claim under the NJLAD, which requires that she be qualified to perform the essential functions of her job, with or without accommodation. Furthermore, the inconsistency in her deposition testimony alone is sufficient to bar her claim. Plaintiff is therefore estopped from claiming that she was qualified to perform the essential functions of her job, with or without accommodation, and summary judgment will be granted as to the First

---

[6]Plaintiff has not presented any evidence, including physician or expert reports, that support her claim that the denial of her request for accommodation caused a medical condition.

Count.[7]

## C. Constructive Discharge Claim

Under the NJLAD, a constructive discharge "occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 27-28 (2002). "[T]he standard envisions a 'sense of outrageous, coercive and unconscionable requirements.'" Id. at 28. Relevant to this analysis is that:

> an employee has the obligation to do what is necessary and reasonable in order to remain employed rather than simply quit. A trial court should consider the nature of the harassment, the closeness of the working relationship between the harasser and the victim, whether the employee resorted to internal grievance procedures, the responsiveness of the employer to the employee's complaints, and all other relevant circumstances.

Id.

The thrust of Plaintiff's argument appears to be that the risk of suffering another seizure as a result of having to drive a longer distance constitutes an intolerable condition.

This is not the type of intolerable conduct which forms the basis of a constructive discharge claim. Defendants actions cannot be considered a constructive discharge for a number of reasons. First, there is no evidence that Acme knowingly permitted conditions of discrimination in its employment of Plaintiff. In fact, Plaintiff admits that during her employment with Acme, she never told any supervisor, manager, or anyone in human resources that she believed she was being discriminated against. Second, other than request that she be

---

[7]Because the court finds that Plaintiff is estopped, it is unnecessary to analyze whether Defendant had an obligation to accommodate her disability.

transferred back to the Jersey City location, she did not do what was necessary and reasonable in order to remain employed.  Plaintiff testified that she never inquired into whether there were any buses or other methods of public transportation that would have enabled her to get to the Milltown store, never looked into a van or taxi service which could have provided transportation, and other than asking one of her sons, Plaintiff did not ask whether any other member of her family or a friend could drive her to work.  Third, Plaintiff has not presented any evidence that Defendant's conduct was even close to the outrageous, coercive and unconscionable conduct required under the standard.

Because Plaintiff has failed to present any evidence that would support her claim of constructive discharge, there is no genuine issue of material fact.  Therefore, summary judgment will be granted as to the Second Count.

**D.**     **Retaliation Claim**

The NJLAD states that it shall be an unlawful employment practice or unlawful discrimination:

> d.  For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. § 10:5-12.

In order to state a claim for retaliation under the NJLAD, an employee must show that: (1) she engaged in protected conduct known to the employer; (2) she was subjected to an adverse employment decision; and (3) there was a causal link between the protected activity and the

11

adverse decision. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265 (3d Cir. 2001); Marrero v. Camden County Bd. of Soc. Servs., 164 F. Supp. 2d 455 (D.N.J. 2001). Complaints, "whether oral or written, formal or informal, are sufficient to satisfy the first prong of the prima facie case, provided the complaints expressed . . . opposition to a protected activity . . ." Abramson, 260 F.3d at 288.

Plaintiff argues that she satisfies the first prong of the test because her "presentation of a doctor's note to Acme management on numerous occasions since 1998 constitutes protective activity." (Pl.'s Br. 21).

Although it is undisputed that Plaintiff provided the Defendant with prior notice of her driving restrictions, the presentation of a doctor's note by an employee to her employer does not, by itself, constitute protected conduct under the NJLAD. Not only has Plaintiff failed to present any evidence that she complained about discriminatory conduct, but she testified that during her employment, she never told any supervisor, manager, or anyone in human resources that she believed she was being discriminated against. See Mattei v. Turner Constr. Co., No. Civ. A. 03-5472(JAP), 2005 WL 1683646, at *4 (D.N.J. July 19, 2005) (finding, under both NJLAD and Title VII, plaintiff failed to establish he was engaged in protected activity where memo sent to employer did not include complaints of discrimination and plaintiff never verbally complained to anyone). Because there is no evidence that Plaintiff engaged in protected conduct known to her employer, summary judgment will be granted as to the Third Count.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment will be granted on all remaining counts. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 11, 2006